# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **RENEE COLOMB** | * | **CIVIL ACTION NO. 06-0891** |
| **VERSUS** | * | **MAGISTRATE JUDGE HILL** |
| **LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, ET AL** | * | **BY CONSENT OF THE PARTIES** |

## MEMORANDUM RULING ON MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the Motion for Summary Judgment filed by defendants, the Lafayette City-Parish Consolidated Government, former Chief of Police, Randy Hundley, and Officer Marty Deroussel (collectively, the "City"), on December 13, 2007. [rec. doc. 34]. Plaintiff, Renee Colomb, as natural tutrix of the minor child, Jasmine Andrus ("Colomb"), has filed opposition [rec. doc. 51], and supplemental memoranda in opposition. [rec. doc. 69, 73]. The City filed a reply brief. [rec. doc. 64]. Based on the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART**.

## *Background*

On May 31, 2005, Lafayette City-Parish Consolidated Government ("LCPCG") police officers Forest Blanton, Marty Deroussel, and Robin Starring were dispatched

to an apartment complex at 1025 9th Street in Lafayette, Louisiana to investigate a report related to illegal narcotics. The apartment complex is known for drug activity and prostitution. Marcus Bruno, an LCPCG employee employed in the City Abatement Program, accompanied the officers. The officers were also advised to be on the lookout for a black male named Brian Jones, who was banned from the property. Jones' mother lived in Apartment 25, and was being evicted.

While Officer Deroussel was speaking to two women at the apartment complex, they pointed to a man and identified him as a "big time" drug dealer who was entering Apartment 25. As Officer Deroussel approached the apartment, he saw that the suspect was just inside the doorway; the door was open. Officer Deroussel instructed the suspect to come outside to speak with him, which the suspect initially refused. After Officer Deroussel took two to four steps into the apartment, the suspect then complied, and walked outside as instructed. Once outside, Officer Deroussel handcuffed the suspect, and advised him of his rights. Officer Deroussel observed that the suspect appeared fidgety and nervous. When questioned, the suspect identified himself as Cedric Andrus ("Andrus").

After seating Andrus, Officer Deroussel noticed that Andrus' manner of speaking had changed, causing Officer Deroussel to suspect that Andrus was hiding something in his mouth. Therefore, Officer Deroussel instructed Andrus to open his

2

mouth and raise his tongue. While Andrus opened his mouth, he refused to raise his tongue, and turned his head side to side. Officer Deroussel then moved towards Andrus, grabbing him by the base of the skull and around his Adam's apple, and tried to force Andrus to spit out what he had in his mouth.

As Officer Blanton was completing the paperwork on the arrest of another suspect inside Apartment 8, he heard Derouselle and Andrus, and came to assist Officer Deroussel. Officer Blanton overheard Officer Deroussel ordering Andrus to spit out what he had in his mouth, and overheard Andrus continually denying having anything in his mouth.

Subsequently, Officer Deroussel was advised that Andrus had been banned from the apartment complex. At that time, Officer Deroussel arrested Andrus and charged him with remaining after forbidden and resisting an officer. Officers Deroussel and Blanton were unable to detect anything in Andrus' mouth. They specifically advised Andrus that if he had swallowed drugs, it could be dangerous, and that they could take him to the hospital. However, Andrus continued to deny that he had swallowed anything.

Upon entering into the Lafayette Parish Correctional Center, to book Andrus, Officer Deroussel allegedly advised the intake deputy that he thought that Andrus might have swallowed some contraband, and that Andrus could be secreting

3

contraband between his buttocks. A search by the Sheriff's intake deputy revealed the presence of what appeared to be narcotics in Andrus' gluteal crease. Officer Deroussel then completed the arrest warrant, which was notarized by a Sheriff's deputy and amended to add one count of bringing narcotics into a correctional facility. Andrus was placed into a holding cell.

Later, Andrus was discovered unconscious in his cell. He was transported to the hospital, where he died on June 5, 2005. The substance found in his body and on his person was determined to be crack cocaine.

On May 30, 2006, plaintiff, Renee Colomb, the natural tutrix of Andrus' minor child, Jasmine Andrus ("Colomb"), brought this civil rights action under 42 U.S.C. § 1983 against the Lafayette City-Parish Consolidated Government, Randy Hundley, individually and in his official capacity as former Chief of Police of the City of Lafayette; Marty Deroussel, individually and in his official capacity as a police officer of the Police Department of the City of Lafayette, Michael W. Neustrom, individually and in his official capacity as Sheriff of Lafayette Parish, and Travis Guillot, individually and in his official capacity as a deputy sheriff of the Lafayette Parish Sheriff's Office,[1] alleging violations of the Fourth, Eighth, and Fourteenth

---

[1] A separate motion for summary judgment was filed by Sheriff Neustrom and Deputy Guillot, which is addressed in a separate ruling.

Amendments of the United States Constitution, and negligence under Louisiana law.[2]

Plaintiff alleges that Andrus was beaten and received numerous injuries during the course of his arrest and/or detention, and that such force was excessive, unnecessary and cruel, in violation of his constitutional and/or civil rights. Additionally, she asserts that defendants' failure to provide Andrus with medical treatment was deliberately indifferent to his medical needs in violation of his constitutional and/or civil rights under the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

Hundley and the City are alleged to have inadequately trained, supervised, monitored and disciplined officers in the use of force and the need to evaluate arrestees for medical treatment, and that such failure amounted to a policy or custom. Colomb alleges that the failure to train, supervise, monitor and discipline constitutes a violation of § 1983 and Louisiana law.

In the instant motion, the City seeks summary judgment on the grounds that Andrus' constitutional rights were not violated because: (1) the arrest was lawful; (2) the use of force was objectively reasonable; (3) there was no denial of medical care or deliberate indifference; (4) there was no violation of state law for denial of medical care, (5) Deroussel and Hundley are entitled to qualified immunity on the individual

---

[2] All parties consented to the Court's jurisdiction being exercised by the undersigned.

capacity claims; (6) there was no violation of a policy or custom such as to subject these defendants to official capacity liability, and (7) the City cannot be liable if no constitutional violation occurred.

## Summary Judgment Standard

Fed.R.Civ.Proc. Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed.R.Civ.Proc. Rule 56(e) provides, in pertinent part, as follows:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

This Motion is properly made and supported. Thus, plaintiff may not rest on her allegations or denials in her pleadings, but rather must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986). However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, and those supported by only a scintilla of evidence are insufficient. *Little*

*v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Moreover, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2552.

### Analysis of Claims

*Lawfulness of Arrest*

The first issue is whether Andrus' arrest was lawful.

In *Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 1884-1885 (1968), the Supreme Court held that where a police officer observes unusual conduct which leads him reasonably to conclude, in light of his experience, that criminal activity may be afoot, he is entitled to conduct a carefully limited search of such person, and that search is considered reasonable under the Fourth Amendment.

Here, the undisputed evidence shows that police officers were called investigate suspected drug activity in an area known for drug use and prostitution. Once at the scene, two women pointed to Andrus and identified him as a "big time" drug dealer to Officer Deroussel. After Officer Deroussel followed Andrus to Apartment 25 and saw him inside the open doorway, he instructed Andrus to come outside, which Andrus initially refused to do. After Officer Deroussel took two to four steps into the apartment, the suspect complied, and walked outside as instructed.

Andrus appeared to the officer to be nervous and evasive. *See U.S. v. Brignoni-Ponce*, 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) (obvious attempts to evade officers can support a reasonable suspicion).

The law in this Circuit appears unsettled as to whether an officer may conduct a *Terry* stop of a suspect in a doorway. *See U.S. v. Gori*, 230 F.3d 44 (2nd Cir. 2000) (officers needed no warrant once apartment was opened to public view by defendants in response to the knock of an invitee); *U.S. v. Crapser*, 472 F.3d 1141 (9th Cir. 2007) (holding that when suspect voluntarily opens the door of his residence in response to a non-coercive "knock and talk" request, the police may temporarily seize the suspect outside the home or at the threshold where they have a reasonable suspicion of criminal activity).

Additionally, the facts are disputed as to whether probable cause existed for the arrest. Probable cause to arrest depends "upon whether, at the moment the arrest was made . . . the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *Adams v. Williams*, 407 U.S. 143, 148-149, 92 S.Ct. 1921, 1924 - 1925 (1972) (*quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). Generally, the court will evaluate the circumstances at the time of the arrest

to decide if the officer had probable cause for his action. *Id*.

At this point, a genuine issue of material fact exists as to when the arrest occurred, and whether the officers had probable cause to arrest Andrus. Accordingly, the motion for summary judgment on this issue is **DENIED**.

*Excessive Force*

The next claim is that Officer Deroussel used excessive force against Andrus.

All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen are to be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Conner*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id*. at 396-97. As in other Fourth Amendment contexts, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id*. (*citing Scott v. United States*, 436 U.S. 128, 137-139, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978).

In the Fifth Circuit, in order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege "(1) an … injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993) (*quoting Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989) (en banc)).

In this case, the undersigned finds that a genuine issue of material fact exists as to whether the officers used excessive force in this case. The parties dispute the cause of the marks on Andrus' body, and dispute the amount of force used to make the arrest. Accordingly, summary judgment on this issue is **DENIED**.

*Inadequate Medical Care*

Plaintiff's next claim is that the defendants failed to provide prompt and adequate medical treatment to Andrus.

Because plaintiff was a detainee at the time of the complained of actions and inactions, the applicable standard for this claim depends upon whether the claim is directed to a general "condition of confinement" or to an "episodic act or omission." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (*quoting Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir. 1996)). In *Nerren v. Livingston Police Dept.,* 86 F.3d 469 (5th Cir. 1996), the Fifth Circuit classified a case involving alleged inadequate

medical care to an arrestee as an episodic case. Thus, the instant claim is properly analyzed as an episodic act case.

In *Nerren*, the court applied a deliberate indifference standard stating, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." *Id*. at 473. The court then defined subjective deliberate indifference as "subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *Id.* This is the same standard applicable to convicted prisoners under the Eighth Amendment, that is, the medical care must be "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *see also Sibley v. LeMaire,* 184 F.3d 481, 489 (5th Cir. 1999) (noting that episodic act cases are analyzed under the same standard applicable to convicted prisoners under the Eighth Amendment).

The plaintiff must allege, and be able to prove, that each named defendant has been deliberately indifferent to his serious medical needs or the claim is subject to dismissal as frivolous. *Graves v. Hampton*, 1 F.3d 315, 319-20 (5th Cir. 1993), *abrogated on other grounds by Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994); *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). Deliberate indifference

encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind; thus, the test is "subjective recklessness" as used in the criminal law. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997).

Deliberate indifference cannot be proven through cumulative group acts, but rather, "each defendant's subjective deliberate indifference, *vel non*, must be examined separately." *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999). It is not enough to demonstrate that the defendant was negligent, rather it must be shown that the actions were so reckless as to amount to deliberate indifference. *Sibley*, 184 F.3d at 489.

Under Louisiana law, it is the duty of the officer to see that reasonable medical service is provided to a prisoner if and when his physical condition discloses the need of such services. *Brown v. Lee*, 94-104 (La. App. 5th Cir. 7/13/94); 639 So. 2d 897, 899 (*citing Abraham v. Maes*, 430 So. 2d 1099, 1102 (La. App. 4th Cir. 1983).

In this case, a genuine issue of material fact exists as to whether defendants were deliberately indifferent to Andrus' medical needs. At this juncture, the facts are disputed as to whether the officers had subjective knowledge as to Andrus' taking a dangerous substance and whether Andrus had refused medical treatment. Accordingly, summary judgment on this issue is **DENIED**.

*Qualified Immunity*

Next, defendants argue that to the extent that Officer Deroussel and former Police Chief Hundley were sued in their individual capacities, they are entitled to qualified immunity from civil damages.

Government officials are entitled to qualified immunity for civil damages if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In other words, qualified immunity is available when a reasonable official would not have known that his actions would violate a constitutional right that was clearly established at the time of the incident. *Id.* at 2738. Qualified immunity is not merely a defense to liability but an immunity from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 1208 (1995).

Claims of qualified immunity require a two-step analysis. First, the court must determine whether the plaintiff has alleged that "the officer's conduct violated a constitutional right." *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003). If there is no constitutional violation, the court's inquiry ends. *Id.* However, if "the allegations could make out a constitutional violation", the court must ask "whether the right was clearly established – that is, whether 'it would be clear to a reasonable

13

officer that his conduct was unlawful in the situation he confronted.'" *Id.* (*quoting Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)).

For summary judgment purposes, the defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*.

Here, defendants have pled the defense of qualified immunity. However, plaintiff has failed to meet the burden of showing that Officer Deroussel or Hundley's allegedly wrongful conduct violated clearly established law. Accordingly, the motion for summary judgment on this issue is **GRANTED**, and the claims against these defendants in their individual capacities are **DISMISSED WITH PREJUDICE**.

*Official Capacity Claim*

Plaintiff has also sued Deroussel and Hundley in their official capacities.

A suit against a governmental officer "in his official capacity" is the same as a suit against the entity of which the officer is an agent. *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734, 1737, 117 S.Ct. 1734 (1997). Well settled Section 1983 jurisprudence establishes that supervisory officials cannot be held

vicariously liable for their subordinates' actions. *Mouille v. City of Live Oak, Tex*. 977 F.2d 924, 929 (5th Cir.1992) (*citing Monell v. Department of Social Services*, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 2036-38, 56 L.Ed.2d 611 (1978). Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury. *Id*. (*citing Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987).

Municipalities can be held vicariously liable for the actions of their employees. *City of Canton v. Harris*, 489 U.S. 378, 395, 109 S.Ct. 1197, 1208, 103 L.Ed.2d 412 (1989). However, a municipality cannot be held liable under a theory of *respondeat superior*; rather, liability must be based upon a municipality's official or unofficial policy, custom or procedure which causes a deprivation of plaintiff's constitutional rights. *Monell v. Department of Social Services*, 436 U.S. 658 (1978), 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443 (1993). Furthermore, liability can only be predicated on a policy established by an official whose acts or edicts may fairly be said to represent official policy of the municipality. *Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir. 1984), *and on rehearing*, 735 F.2d 861 (5th Cir. 1984).

Here, plaintiff alleges that the City's policies regarding the use of force to effect arrest and prisoner transportation for inmates with medical issues are woefully inadequate. She further asserts that the City provided inadequate training to officers on medical issues. However, plaintiff fails to show any direct personal involvement by Hundley in the medical care, or the lack thereof, of Andrus; she has failed to show that any use-of-force or medical policy so deficient that the policy itself acts as a deprivation of constitutional rights. Thus, plaintiff does not have a valid claim for violation of any constitutional rights based upon these allegations.

Accordingly, summary judgment on this issue is **GRANTED**, and all claims against Deroussel and Hundley in their official capacities are **DISMISSED WITH PREJUDICE**. All claims against the City under § 1983 are also **DISMISSED WITH PREJUDICE**.

## CONCLUSION

Based on the foregoing reasons, the motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. The Motion for Summary Judgment is **GRANTED** on the individual capacity claims against Deroussel and Hundley based on qualified immunity under § 1983, and on the official capacity claims against Hundley, Deroussel and the City under § 1983, and those claims are

**DISMISSED WITH PREJUDICE**.

September 12, 2008, Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE